(No. 24659.—

The People of the State of Illinois, Defendant in Error, *vs.* Henry O. Jochums, Plaintiff in Error.

*Opinion filed June 21, 1938—Rehearing denied October 5, 1938.*

Arthur C. Fort, and Edward F. Riely, for plaintiff in error.

Otto Kerner, Attorney General, George H. Riley, State's Attorney, and A. B. Dennis, for the People.

Mr. Justice Stone delivered the opinion of the court:

Plaintiff in error was found guilty in the circuit court of Woodford county of withholding funds collected by him as circuit clerk and *ex-officio* recorder of deeds of that county, and failing and refusing to turn the same over to his successor in office on demand.

The indictment charges that he collected the sum of $3944.73 in money, warrants and other funds belonging to the county of Woodford; that on October 6, 1937, his occupancy of the office was terminated and on that day one Paul V. Lancaster was duly appointed his successor, and that on December 2, following, Jochums failed and refused to pay over the said sum to Lancaster on demand therefor,

as required by law. Jochums' attorney filed a motion to quash the indictment. This was overruled, and on trial he was found guilty and sentenced to the penitentiary for a period of not less than one nor more than ten years.

Plaintiff in error's first assignment of error concerns the sufficiency of the indictment. His counsel say that it charges no crime under the statute and that it was, therefore, error to deny his motion to quash. They also say that Jochums owed no duty to pay this money over to Lancaster, his successor, but under the statute it was his duty to pay it into the county treasury. The People argue that under the statute it was Jochums' duty to pay the money in his hands, belonging to Woodford county, to his successor.

The People rely on section 21 of the statute concerning clerks of courts, (Ill. Rev. Stat. 1937, chap. 25, par. 21,) as showing such duty on the part of Jochums. It provides as follows: "Whenever a clerk of any court shall go out of office, it shall be his duty to deliver over to his successor, and of his successor to demand and receive from him, all the books, papers, records and other things appertaining to his office, or in the possession of such outgoing clerk, by virtue of his office. And should any person herein required to give up the books, papers, records and other things, as aforesaid, refuse to do so on such application and demand, the court shall have power to use such compulsory process, and take such measures as may be necessary to coerce the delivery as aforesaid, according to the true intent and meaning hereof." To this contention plaintiff in error's counsel reply that pertinent sections of the statutes demonstrate that the section just quoted does not apply to funds collected, but that such funds, and the officer's duty in regard thereto, are covered by statutes requiring that funds belonging to the county be paid into the county treasury. Thus the first issue in the case is formed.

The indictment is brought under section 215 of the Criminal Code. (Ill. Rev. Stat. 1937, chap. 38, par. 460.)

So far as applicable here, this section reads as follows: "If any State, county, town, municipal or other officer, or person, who now is or hereafter may be authorized by law to collect, receive, safely keep or disburse any money, revenue, * * * or other funds or securities belonging to the State, or any county, * * * shall fail or refuse to pay or deliver over the same when required by law, or demand is made by his successor in office or trust, or the officer or person to whom the same should be paid or delivered over, or his agent or attorney, authorized in writing, he shall be imprisoned in the penitentiary not less than one nor more than ten years."

It will be noted that the gist of the offense charged in that section of the statute is the failure or refusal to pay or deliver the funds "when required by law, or demand is made by his successor in office or trust, or the officer or person to whom the same shall be paid or delivered over," etc. This section does not designate the person entitled to have the funds turned over to him, and if other statutes require that the surplus funds in the hands of a circuit clerk and *ex-officio* recorder be turned over to the county treasurer, it follows, under section 215, that the one to whom payment of the funds is to be made is the county treasurer, and that he is "the officer or person to whom the same shall be paid or delivered over," rather than Jochums' successor. Section 215 was evidently drawn to cover either situation. As was shown in *People* v. *Anderson,* 342 Ill. 290, a county treasurer may be liable under this section of the Criminal Code for refusal to turn over funds to his successor, but no question can be raised concerning the authority of his successor to demand and receive such funds since he also is the county treasurer and, under the law, custodian of the funds of the county.

The question in this case, as to whether Jochums' successor or the county treasurer is the person to whom Jochums should pay over the funds in his hands, is of first importance

here, for the reason that if the county treasurer is the one under the law entitled to receive the funds, the refusal of an outgoing circuit clerk to pay over funds in his hands to his successor, is not a violation of section 215 of the Criminal Code, and this indictment does not charge the commission of a crime. That question has not heretofore been passed upon by this court. Who, then, is entitled to receive these funds withheld by Jochums?

Section 216 of the Criminal Code has directly to do with refusal of an outgoing county official to turn over to his successor the books, papers and property of his office. It provides that any person whose office shall be abolished by law, vacated or determined by removal from office, resignation, death, expiration of the time for which he was elected or appointed, or other cause, who withholds from his successor "the records, papers, documents or other writings or other articles of property appertaining or belonging to such office," shall be imprisoned in the penitentiary for not less than one nor more than five years.

Section 51 of the Fees and Salaries act, (Ill. Rev. Stat. 1937, chap. 53, par. 69,) requires that "Every county officer of counties of the first and second classes, who shall be paid in whole or in part by fees," shall keep a record of all fees and emoluments of his office received by him, and shall also keep an account of his necessary expenditures, and on the first day of December and June each year make a report or return thereof in writing to the county board, showing the total amount of fees and emoluments and expenses of the office, together with the amount of the salary allowed him. The county board shall thereupon audit this report "and shall order that such officer shall pay over such balance to the county treasurer." In section 52 of the Fees and Salaries act it is provided that "all fees, perquisites and emoluments received by said county officers in counties of the first and second classes, (above the amount of their compensation fixed by the county boards and for clerk hire

and other necessary expenses) shall be paid into the county treasury," etc.

Section 1 of an act entitled: "An act in relation to costs and fees remaining in the hands of clerks of courts of record," etc., (Ill. Rev. Stat. 1937, chap. 33, par. 29,) provides: "The clerk of any court of record or the sheriff of any county of this State, shall, at the end of each year after entering upon the duties of his office, and also within ten days after the expiration of the term of his office, pay to the treasurer of the county in which his court is held, all costs and fees collected and remaining in his hands. * * * Provided, however, that nothing in this section shall apply to any costs and fees rightfully belonging to any such clerk or sheriff."

These constitute the statutory provisions concerning the person to whom excess funds in the hands of the circuit clerk should be paid. It will be noted that, in each instance, the duty imposed is to pay such funds into the county treasury. No statute specifically mentions funds as a part of the books, papers and property, etc., to be turned over by a county officer to his successor. Section 215 of the Criminal Code, hereinbefore quoted, as has been hereinbefore observed, requires payment to the successor or officer entitled to receive it. The only circumstances under which funds are to be paid to the successor of the outgoing officer are those in which the law entitles such successor to custody of the funds. The language is "his successor or officer in trust, or the officer or person to whom the same shall be paid or delivered over." Whether, in this instance, Jochums' successor was so entitled depends not upon section 215 of the Criminal Code but upon the various other sections of the statute which determine such officer's duty in that behalf.

Turning to the constitutional provisions we find that section 9 of article 10 of the constitution of 1870 provides: "The clerks of all the courts of record, * * * shall receive, as their only compensation for their services, salaries

to be fixed by law, * * * and shall be paid, respectively, only out of the fees of the office actually collected. All fees, perquisites and emoluments (above the amount of said salaries) shall be paid into the county treasury." Section 10 of article 10 of the constitution, after providing for the fixing of compensation for all county officers and clerk hire and expenses by the county board, provides: "All fees or allowances by them received, in excess of their said compensation, shall be paid into the county treasury."

It thus seems clear that the purpose of the constitution and statutes is that a county officer, such as this defendant was, shall, at stated intervals and upon quitting the office, turn over any balance of funds in his hands to the county treasurer. It is expressly provided that he do so within ten days after the expiration of his term of office. We are of the opinion that the clear intent of these statutes is that no matter how his tenure of office is terminated, his duty is to pay over to the county treasurer any balance in his hands, after payment of compensation to which he may rightfully be entitled, and necessary expenses of the office. No one else, under the constitution or statutes, is entitled to receive it. There is no reason in the nature of things why these funds should be paid to his successor. The county treasurer, only, is entitled to any such balance in the hands of the outgoing circuit clerk. They represent the balance of the earnings in his hands, collected during his incumbency in office, with which his successor has had nothing to do. It is conceded, in this case, that the amount involved here represents collections extending over a period of years. Certainly Jochums' successor could claim no interest whatever in any such funds collected prior to July 1, 1937, the date of the last statement or report.

If it be argued that such successor should have the right, for the balance of the six-months' period, to draw on such funds if needed for expenses or salaries accruing after he took office, which in this case would be for the months of

October and November, 1937, and for this reason should have possession of them, such a situation is met by the provision of section 52 of the Fees and Salaries act, (Ill. Rev. Stat. 1937, chap. 53, par. 70,) that in counties of the first and second classes all excess fees of the county officers paid into the county treasury "shall be placed in a separate fund to be known as 'county officers fund' and used for the purpose of paying any of the necessary expenses of the several county officers," etc., and by section 51 of that act, providing that a county officer of the class here considered, when his report shows that the fees and emoluments for the period for which he is reporting were not sufficient to pay his salary in full, is entitled to have an order of the county board upon the county treasurer to pay such balance out of the excess fees theretofore paid into the county treasury by that office.

It seems clear, therefore, that under the provisions of the statute it was Jochums' duty to pay these funds into the county treasury and that he owed no duty to turn them over to his successor. Moreover, Jochums' bond ran to the People for the benefit of Woodford county, and under the provisions of the statutes quoted, it may well be doubted whether payment to Jochums' successor could be shown as a defense to demand and suit by the county treasurer for them.

As there was no duty resting on Jochums to pay over these funds to his successor, the indictment charging him with refusal so to do did not charge a crime and should have been quashed.

The judgment of the circuit court is erroneous, and is reversed.

*Judgment reversed.*